**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

DEAN PIEPIORA,

        Plaintiff,

v.                                  CIVIL ACTION NO. 3:25-0122

ALCON RESEARCH, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant Alcon Research, LLC fired Plaintiff Dean Piepiora, purportedly because Plaintiff used a racial slur in front of his coworkers. Plaintiff sued, alleging that Alcon fired him because of his race and age.

Before the Court is Alcon's Motion for Summary Judgment (ECF 41, Def.'s Mot.). For the reasons stated below, the Court **GRANTS** the Motion.

**BACKGROUND**

Alcon employed Mr. Piepiora as a Senior Manager at its facility in Huntington, West Virginia. ECF 1-1, Compl. ¶ 9. Alcon maintains a Global Policy on Anti-Harassment and Anti-Discrimination which prohibits employees from using "discriminatory slurs . . . at any Company Workplace." Def.'s Mot., Ex. B § 3.2. The Policy specifies that "Company Workplace" includes any "location that can reasonably be regarded as an extension of the workplace, including . . . work-related social events . . . ." *Id.* at 1.

One day, Piepiora went out with some coworkers to play golf. Compl. ¶ 12. The group was celebrating a coworker's departure from employment. *See* Def.'s Mot., Ex. A 13. One of the

attendees was Isaac Harris. *See* Def.'s Mot., Ex. E 53. Mr. Harris is black and seven years younger than Mr. Piepiora. *See* Def.'s Mot., Ex. A 107; ECF 43, Pl.'s Resp. 2 n.2; Pl.'s Resp., Ex. 1, at 40. During the outing, Harris began playing music. Pl.'s Resp., Ex. 1, at 18. According to Mr. Piepiora, one of the songs Mr. Harris played included the "N" word.[1] *See id.* In response, Plaintiff, who is white, said "I don't like this n\*gger music." *Id.* at 19; *see* Compl. ¶ 10. It is unclear who heard Piepiora use the slur and how the group reacted. *Compare* Def.'s Mot., Ex. H 42 *with* Pl.'s Resp., Ex. 1, at 7–8; *compare* Def.'s Mot., Ex A 19 *with* Pl.'s Resp., Ex. E 74. Regardless, Plaintiff admitted he said the "N" word. *See* Pl.'s Resp., Ex. 8, at 8. He also admitted that Vince Pack, another employee at the outing, told him he needed to apologize to Mr. Harris for using the slur. *See* Def.'s Mot., Ex. A 32. Piepiora did not apologize to Harris until weeks later, when Alcon's Human Resources Department interviewed Piepiora about the incident. *See id.* at 33.

About two months after the golf outing, an employee filed a complaint about Mr. Piepiora's use of the "N" word. *See* Compl. ¶ 13;  Def.'s Mot., Ex. I 40. Alcon's Huntington Director of Human Resources, Erin Adkins, promptly opened an investigation. *See* Compl. ¶ 13; Def.'s Mot., Ex. I 40.

Ms. Adkins ultimately determined that Plaintiff had said the "N" word in front of his colleagues. *See* Def.'s Mot., Ex. J ¶ 16. Based on this finding, Alcon's Internal Review Committee (IRC), together with Ms. Adkins and Alcon Senior Director Ben Sullivan, decided that Mr. Piepiora should be terminated. *See id.* ¶¶ 16–17; Def.'s Mot., Ex. L ¶ 7–8. Adkins testified that Piepiora's initial failure to apologize to Harris did not affect the decision to terminate him. *See* Pl.'s Resp., Ex. 3, at 51.

---

[1] Two of the other employees who were present denied that the lyrics included the "N" word. *See*  44, Ex. D 53.

As part of her investigation, Ms. Adkins interviewed Mr. Pack. *See* Pl.'s Resp., Ex. 5, at 49–50. Mr. Pack claimed he told Adkins that Mr. Harris had referred to a group of white employees going out to lunch as a "Klan meeting."[2] *Id.* at 45–46, 51–52. Pack said Harris apologized the next day. *Id.* at 46.

IRC member Beverley Rouse stated that neither Harris's "Klan meeting" comment nor his allegedly offensive music warranted discipline, in part because Harris timely apologized. *See* Def.'s Mot., Ex. C ¶ 20. IRC member Duane Stumpf agreed that playing music with the "N" word "is in no way comparable to Piepiora's direct interpersonal use of the slur." Def.'s Mot., Ex. J ¶ 29. Harris never faced any discipline for his conduct. *See* Pl.'s Resp., Ex. 3, at 77.

Each party points to other Alcon employees whose past treatment, in their view, demonstrates race or age bias or the lack thereof.

*First*, Alcon points out that it has consistently terminated employees for using the "N" word, regardless of their race. *See* ECF 42, Def.'s Mem. 12 (citing Def's Mot., Ex. J ¶ 25).

*Second*, Mr. Piepiora argues that Alcon's treatment of Jarvis Lang, a black employee, reveals that Piepiora's firing was racially motivated. *See* Pl.'s Resp. 16. A few years before Piepiora's termination, Alcon transferred Lang to a different department after Lang intentionally submitted an incomplete form. *See* Pl.'s Resp., Ex. 2, at 21–23; ECF 44, Def.'s Reply, Ex. D 71–72. After the transfer, Mr. Harris became Mr. Lang's supervisor. *See* Pl.'s Resp., Ex. 4, at 43. According to Harris, there were rumors that Lang had been transferred because Lang and Harris are both black. *See id.* After Lang was transferred, he was disciplined for violating Alcon's dress code and for bringing coffee to a loading dock. *See id.* at 34–35. Lang was not terminated for either incident. *See* Pl.'s Resp., Ex. 3, at 67–68.

---

[2] Adkins said she did not remember Pack telling her this. *See* Pl.'s Resp., Ex. 3, at 83.

*Third*, Plaintiff's Complaint alleges that, "in late 2023-early 2024, Defendant began a deliberate campaign to encourage older workers over the age of forty . . . to retire and/or go part time in order to make substantial budget cuts." Compl. ¶ 14. Ms. Adkins acknowledged that Alcon had given two older employees—Tim Buches and Ron Piaskowski—the option to go part time. *See* Pl.'s Resp., Ex. 2, at 30. She testified that Alcon gave Mr. Piaskowski the option because Piaskowski had previously asked to go part-time. *See id.* at 31. She said Alcon asked Mr. Buches if he wanted to go part-time because his wife had a terminal illness. *See id.* at 32–33. He declined. *See id.* at 33. *See id.* at According to Mr. Piepiora, another Alcon employee told him the company was going to ask Mr. Piaskowski to go part-time because of Mr. Piaskowski's age. *See* Pl.'s Resp., Ex. 1, at 98.

*        *        *

Plaintiff asserts that his termination violated the West Virginia Human Rights Act (WVHRA) and West Virginia public policy. *See* Compl. ¶¶ 20, 28, 37. He also alleges that Alcon intentionally caused him to suffer emotional distress. *See id.* ¶ 45.

Alcon moved for summary judgment, arguing that Mr. Piepiora "is unable to establish any inference of discrimination, and there is no evidence that Alcon's decision to terminate his employment was pretextual or in any way motivated by his age or race." Def.'s Mem. 3.

**LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence presented would allow a reasonable factfinder to find for the nonmovant. A fact is 'material' if it may influence the outcome of the suit under governing law." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal citations

-4-

omitted). In deciding whether to grant summary judgment, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party . . . ." *Id.*

### A. WVHRA Claims

"Discrimination claims brought under the WVHRA are governed by the burden-shifting framework of Title VII of the Civil Rights Act of 1964, laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)." *Bartos v. PDC Energy, Inc.*, 275 F. Supp. 3d 755, 760 (N.D. W. Va. 2017). To make out a prima facie case of employment discrimination under the WVHRA, a plaintiff must establish "(1) [t]hat [he] is a member of a protected class[,] (2) [t]hat the employer made an adverse decision concerning the plaintiff[, and] (3) [b]ut for the plaintiff's protected status, the adverse decision would not have been made." *Burke-Parsons-Bowlby Corp. v. Rice*, 736 S.E.2d 338, 344 (W. Va. 2012). "Upon establishing a prima facie case, the burden shifts to the employer to provide a non-discriminatory reason for the plaintiff's dismissal. . . . The burden then shifts back to the plaintiff to prove that the facially legitimate reason given by the employer for the employment decision was merely pretext for a discriminatory motive." *Bartos*, 275 F. Supp. 3d at 760–61.

The Court assumes, without deciding, that Plaintiff has made out a prima facie case. Defendant has provided a non-discriminatory reason for terminating Plaintiff—his use of the "N" word. The question, then, is whether Plaintiff has offered sufficient evidence that this reason was pretextual.

#### 1. *Race Discrimination*

Plaintiff argues that several pieces of evidence support his race-discrimination allegation.

*First*, Plaintiff points to Alcon's failure to discipline Mr. Harris for playing music with the "N" word and calling a group of white coworkers a "Klan meeting." *See* Pl.'s Resp. 11–12. Piepiora and Harris's conduct, however, was not so similar that their disparate treatment provides evidence of discrimination. While an employee filed a formal complaint against Piepiora for his use of the "N" word, Adkins testified that no one made a complaint about Mr. Harris's music or the "Klan meeting" comment. *See* Def.'s Reply, Ex. D 84; Def.'s Reply, Ex. I 65–66. She believed Piepiora brought up the music "to justify his use of the word." Def.'s Reply, Ex. I 66.

Plaintiff argues that Alcon's disparate treatment of Mr. Piepiora and Mr. Harris was discriminatory because Piepiora and Harris violated the same provision of Alcon's anti-discrimination policy: "Examples of prohibited conduct include . . . making racial . . . slurs, jokes, or epithets . . . ." Def.'s Mot., Ex. B § 3.2; *see* Pl.'s Resp. 8, 16. But even if Piepiora's use of the "N" word and Harris's "Klan meeting" comment violated this provision, it does not follow that Alcon's decision not to discipline Harris is evidence of discrimination. It is unsurprising for an employer to treat different violations of the same policy differently based on the violations' relative severity.[3] Plaintiff may disagree that saying the "N" word to a group of coworkers is worse than playing music with the slur or referring to a group of white people as a "Klan meeting" during a private conversion, *see* Pl.'s Resp. 16, Alcon taking that view is not evidence of pretext.

Nor was it evidence of pretext for Alcon to consider Mr. Harris's apology in deciding not to discipline him, even though Adkins said Alcon would have terminated Mr. Piepiora regardless of whether he had apologized earlier. It is Alcon's prerogative to decide when an apology should

---

[3] During a hearing on Defendant's Motion, Plaintiff's counsel stated that Alcon's anti-discrimination policy requires Alcon to treat all violations of the policy equally. The policy does not say this. In fact, it provides that, "[i]f an investigation substantiates a report of misconduct, the Company will take such actions as is appropriate under the circumstances." Def.'s Mot., Ex. B § 3.5.

affect disciplinary outcomes and when it should not. Given the differences between Piepiora and Harris's conduct, Defendant's different attitudes towards apologizing do not indicate racial bias.

*Second*, Plaintiff seems to suggest that the basis for his termination was so thin that a jury could infer he was fired because of his race. *See* Pl.'s Resp. 13. Piepiora attacks the basis for his firing on the grounds that "the use of the 'n' word alone is not sufficient to support a race claim for hostile work environment." *Id.* Plaintiff's argument is a non sequitur. An employer may validly fire an employee for misconduct even if that misconduct does not expose the employer to legal liability. Also, the Court cannot agree that firing someone for saying the "N" word is so absurd or surprising that it evinces pretext.

*Third*, Plaintiff points to Alcon's policy of "encourag[ing] diversity." Pl.'s Resp. 14 (quoting Pl.'s Resp., Ex. 11, at 10). Piepiora argues this policy, coupled with Alcon's overwhelmingly white workforce, suggests Alcon was interested in replacing white employees with employees of color. *See id.* A reasonable juror could perhaps conclude, based on these facts, that Alcon was generally interested in increasing minority employment. However, these facts do not provide enough evidence that Piepiora's firing, in particular, was racially motived. Plaintiff was not replaced by a person of color, nor did his termination meaningfully alter the overwhelmingly white makeup of Alcon's Huntington workforce. Also, this evidence is undermined by Alcon's decision to lay off Harris—one of the Huntington facility's two black managers—less than a year after Alcon fired Piepiora. *See* Pl.'s Resp., Ex. 4, at 31; Pl.'s Resp., Ex. 9, at 3.

In support of his argument, Plaintiff cites *Duvall v. Novant Health*. *See* Pl.'s Resp. 13. In *Duvall*, the Fourth Circuit upheld a jury verdict in favor of a white plaintiff who claimed his firing was racially motivated, in part because evidence showed the defendant-employer wanted to

increase the proportion of women and people of color in its workforce. *See* 95 F.4th 778, 782–84, 788–89, 791 (4th Cir. 2024). *Duvall* is distinguishable on several grounds. First, the evidence of discriminatory intent in *Duvall* was much greater than a passing reference to "encouraging diversity." *See id.* at 782–84. For example, the defendant in *Duvall* "adopted a long-term financial incentive plan that tied executive bonuses . . . to achieving specific percentages of [minority] groups in the workforce . . . ." *Id.* at 784. Here, Plaintiff lacks evidence that Alcon was motivated by anything other than Plaintiff's use of the "N" word. Second, the plaintiff in *Duvall* was replaced by a black woman. *See id.* at 782. Alcon, in contrast, did not replace Mr. Piepiora. *See* Def.'s Mot., Ex. D 69–70. Third, the *Duvall* defendant "had *no* record of any documented criticism of [the plaintiff's] performance or reasons for his termination." 95 F.4th at 782 (emphasis in original). Here, Alcon provided a well-documented reason for terminating Piepiora.

*Fourth*, Plaintiff points to Adkins's suggestion that more senior employees are disciplined more harshly for misconduct. *See* Pl.'s Resp. at 15. The Court does not understand how disparate treatment based on seniority provides evidence of racial discrimination.

*Fifth*, Plaintiff suggests that Alcon's decision not to terminate Mr. Lang, a black employee, demonstrates racial bias. *See id.* at 16. Lang's conduct, however, is not at all similar to Mr. Piepiora's. Whereas Piepiora said the "N" word, Lang incorrectly filled out a form, violated the company's dress code, and brought coffee to an area where it was not allowed. Alcon's decision to transfer Lang does not suggest that Piepiora's termination was based on race.

Also, rumors that Mr. Lang was placed under Mr. Harris's supervision because both are black has little to do with the basis for Piepiora's termination. A reasonable juror could not conclude, based on those rumors, that Piepiora was fired because he is white.

*Sixth*, Plaintiff notes that Ms. Adkins's report on the golfing incident lists the race and age of each individual involved. *See id.* at 7 (citing Pl.'s Resp., Ex. 8, at 2). This is not enough for a reasonable juror to find in Plaintiff's favor.

Even when considered together, the pieces of evidence Plaintiff points to could not support a reasonable juror concluding that Plaintiff was fired because of his race. Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's race-discrimination claim.

### 2. Age Discrimination

Plaintiff argues that several parts of the record suggest he was terminated because of his age.

*First*, Plaintiff asserts that Alcon tried to force two older employees to go part time or retire early. *See id.* at 17. This assertion is not supported by the record. Of the two employees who were given the option to go part time, one—Mr. Piaskowski—had asked for that option before it was offered, and the other—Mr. Buches—was dealing with his wife's terminal illness. According to Piepiora, an Alcon employee said the company was going to offer Piaskowski the option because of his age. Piepiora testified, however, that "it was totally [Piaskowski's] option one way or the other[.]" Pl.'s Resp., Ex. 1, at 98. An age-based offer to go part-time, without any pressure or consequences for turning it down, does not indicate bias against older employees. *Cf. Palmer v. Liberty Univ., Inc.*, No. 6:20-cv-31, 2021 WL 5893295, at *5, 9 (W.D. Va. Dec. 10, 2021) (granting summary judgment in favor of age-discrimination defendant where the defendant considered offering an older employee the opportunity to retire). If anything, the offer shows that Alcon has provided extra accommodations to older workers.

*Second*, Plaintiff notes that three of the five individuals who made the decision to terminate him are substantially younger than him. *See* Pl.'s Resp. 17. This does little to support Plaintiff's

claim, especially since the two older decision makers concurred in the decision, *see* Def.'s Mot., Ex. J ¶ 19.

*Third*, Plaintiff points to Alcon's failure to discipline Mr. Harris. *See* Pl.'s Resp. 18. Alcon's treatment of Mr. Harris does not reflect age discrimination for the same reason it does not reflect race discrimination: Piepiora and Harris engaged in different conduct. Even if Piepiora and Harris's actions were comparable, their ages are not different enough to reveal age bias. *See Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 198 (W. Va. 2016) (noting that "age differences of ten or more years have generally been held to be sufficiently substantial" to establish a prima facie claim of age discrimination (quoting *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003))).

*Fourth*, Plaintiff notes that none of the employees who were at the golf outing were disciplined for failing to report Mr. Piepiora's use of the "N" word. *See* Pl.'s Resp. 18. While three of the employees at the outing were substantially younger than Piepiora, *see* Pl.'s Resp., Ex. 8, at 2, failing to report the incident is not similar to saying the "N" word. Accordingly, Alcon's failure to discipline the younger attendees does not suggest Piepiora's firing was based on age.

*Fifth*, Plaintiff points to Alcon firing an older employee as part of a "reduction in force." *See* Pl.'s Resp. 18 (citing Pl.'s Resp., Ex. 9, at 3). Alcon's decision to terminate a single older employee, without any evidence suggesting the decision was based on the employee's age, does not support Plaintiff's claim.

*Sixth*, Plaintiff argues that Alcon previously promoting a younger employee instead of Mr. Piepiora evinces age bias. *See id.* at 7 (citing Pl.'s Resp., Ex. 1, at 99–100). Piepiora, however, acknowledged that his belief that the promotion was based on age was mere "speculation." Pl.'s Resp., Ex. 1, at 100. Accordingly, the promotion does not suggest that Alcon fired Mr. Piepiora because of his age.

Since the record does not support Plaintiff's age-discrimination claim, Defendant is entitled to summary judgment.

## B. Public Policy Claim

In *Harless v. First National Bank*, the West Virginia Supreme Court created a common-law cause of action "[w]here [an] employer's motivation for [a] discharge contravenes some substantial public policy principle . . . ." 246 S.E.2d 270, 275 (W. Va. 1978).

According to Plaintiff:

> Plaintiff's termination was motivated in whole or in part by retaliation and in contravention of substantial public policy, including . . . the public policy against retaliation or discharge from employment based upon Plaintiff's age, race, and making good faith reports of racially offensive music lyrics to his employer during the investigation and exercising free speech on non-work outings.

Compl. ¶ 38.

Defendant argues it is entitled to summary judgment on Mr. Piepiora's *Harless* claim because (1) "Plaintiff cannot recover under both the WVHRA and *Harless* for the same alleged discrimination," Def.'s Mem. 17, and (2) "Alcon cannot be held liable for alleged violations of the public policy of free speech because such protections apply to governmental actors and do not shield employees from disciplinary actions for speech in the private workplace," *id.*

It is unnecessary to address either argument. Even if a plaintiff can recover under both the WVHRA and *Harless* for the same discrimination, no reasonable juror could conclude that Alcon violated the public policy against discriminatory firing. Also, even if *Harless* encompasses terminations based on good-faith reports of misconduct, Piepiora has pointed to no evidence suggesting that Alcon terminated him because he reported Harris's music. Accordingly, Defendant is entitled to summary judgment with respect to Plaintiff's *Harless* claim.

-11-

### C. Intentional Infliction of Emotional Distress Claim

"One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." Syl. pt. 1, *Dzinglski v. Weirton Steel Corp.* 445 S.E.2d 219 (1994) (quoting Syl. pt. 6, *Harless*, 289 S.E.2d 692). When an "employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach." *Id.*, Syl. pt. 2.

Plaintiff has not pointed to any evidence showing that the *way* Alcon terminated him was outrageous. *See id.* Accordingly, Alcon is entitled to summary judgment.

### CONCLUSION

The Court **GRANTS** Defendant's Motion for Summary Judgment (ECF 41). The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        March 18, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE